UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J.S.T. CORPORATION,

                Plaintiff,

                              Case No.

v.

                              Hon.

ROBERT BOSCH LLC,
f/k/a ROBERT BOSCH
CORPORATION, and
ROBERT BOSCH GmbH,

                Defendants.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff J.S.T. Corporation ("JST") alleges against Defendants Robert Bosch LLC ("Bosch") and Robert Bosch Gmbh ("Bosch GmbH") as follows:

## INTRODUCTION

1.    This action concerns Bosch's deliberate misappropriation of trade secrets, drawings and designs for JST's electrical connectors. Following Bosch's demands for lower prices, Bosch disclosed JST's trade secrets, drawings, and designs to a Chinese contract manufacturer in order to make low-cost copies of JST's connectors.

2.    JST is one of the world's leading designers of electrical and electronic connectors.

1560228

3.    JST designs connectors used in a wide array of products including computers, appliances, instruments, machinery, control systems, and automobiles.

4.    Numerous patents have been awarded to JST for its connector designs.

5.    JST is recognized as an industry leader in innovation and quality assurance.  Quality assurance is important because millions of JST connectors are manufactured, sometimes for a single product.  Even a small departure from a quality standard may result in a disrupted electric connection.  Disruption of an electric connection may result in failure of a device or vehicle.  This is of particular concern if the electrical connector is part of a control system for a vehicle, because failure of the control system could result in injury.

6.    The exacting standards required for production of connectors can require years of development and millions of dollars of investment for a single connector program.

7.    It is common in the connector industry for certain design or process specifications to be closely guarded trade secrets.

8.    This case concerns JST's HIT2 Connectors, used in body control modules assembled by Bosch for use in General Motors vehicles.  As set forth in this complaint, JST recently discovered that Bosch obtained proprietary design specifications from JST and then transferred these proprietary design specifications

to a Chinese contract manufacturer, Foxconn. With Bosch's aid, Foxconn is now producing low-cost copies of JST's HIT2 connectors for use in Bosch body control modules in General Motors' vehicles.

## THE PARTIES

9.    J.S.T. Corporation is an Illinois corporation with its headquarters in Waukegan, Illinois.

10.    Robert Bosch LLC purports to be a Delaware limited liability company with a principal place of business in Farmington Hills.

11.    Upon information and belief, Robert Bosch LLC was formerly known as Robert Bosch Corporation.

12.    Upon information and belief, Robert Bosch GmbH is the parent company of Robert Bosch LLC.

13.    Upon information and belief, no member of Robert Bosch LLC resides in Illinois.

14.    Plaintiff reserves the right to join additional defendants as their identities become known.

## JURISDICTION AND VENUE

15.    Bosch's misappropriation of JST's trade secrets, and other unlawful actions as plead herein, have damaged JST in an amount well in excess of $75,000, and there is complete diversity establishing jurisdiction under 28 U.S.C. § 1332(a).

This Court has federal question jurisdiction over the copyright claims in this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).   This Court has supplemental jurisdiction over Plaintiff's trade secret misappropriation, unfair competition, unjust enrichment and breach of settlement agreement claims pursuant to 28 U.S.C. § 1367.

16.    This Court has personal jurisdiction over Defendant Bosch because Defendant maintains its headquarters in this judicial district and committed many of the acts complained of herein within this judicial district.   This Court has personal jurisdiction over Defendant Bosch GmbH because it breached a settlement agreement in a case before this Court.   Paragraph 14 of the Settlement Agreement confirms that this Court has jurisdiction over any action for breach. (Settlement Agreement, Exhibit A).

17.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because many of the transactions described herein occurred in this judicial district, and defendant resides in this judicial district.

## BACKGROUND

### DEVELOPMENT OF THE HIT2 CONNECTOR

18.    In 2005, Bosch approached JST to design an electric connector for a body control module to be used in cars.

4

19.    Engineers at JST's Detroit Engineering Center began working on what would become JST's HIT2 Connector program.

20.    Over the course of the following ten years, JST spent millions of dollars developing and supporting the HIT2 Connector program.

21.    JST's HIT2 development program included design information for JST's HIT2 Connector system, appearing in various drawings ("JST Drawings"), and other technical documents and test data ("JST Designs").

22.    JST's HIT2 development program included the following:

    a.    Researching concept design and design validation;

    b.    Designing a prototype;

    c.    Making tooling for the prototype;

    d.    Testing prototype samples;

    e.    Designing for production;

    f.    Engineering for production;

    g.    Building production tooling;

    h.    Production automation;

    i.    Testing production samples;

    j.    Obtaining approval; and

    k.    Enforcing quality standards.

23.    In addition to developing the HIT2 connector, JST also obtained sophisticated drawings and three-dimensional models for the manufacture of the HIT2 Connector.   These include certain technical specifications such as dimensions and tolerances.

24.    Apart from investment in research and development for a new electrical connector such as the HIT2 Connector, determining and refining specific tolerances for a connector requires substantial additional investment, research, engineering, testing, and quality assurance.  The resulting tolerances are critical for long-term production quality and are unique to each manufacturer.

25.    JST's initial HIT2 Connector program neared completion in 2007, with the first HIT2 Connectors being sent to Bosch in early 2008.

## SUCCESS OF JST'S HIT2 CONNECTOR

26.    JST's HIT2 Connector was ordered in increasing quantities, resulting in more than 15,000,000 units sold to the Bosch group.

27.    JST's HIT2 Connector has been used in multiple global General Motors vehicles including: (a) Chevrolet: Equinox, Aveo, Trax, Camaro, Colorado, Canon, Volt, Cruze, Malibu, Trailblazer, S10, Spark, Legacy, Orlando, and Tracker; (b) Buick, Regal, Verano, Lacrosse, SRX, ELR, CT6, Excelle, Anthem, and Encore; (c) GMC: Terrain; (d) Opel: Astra, Corsa, Insignia, and Mokka; and (e) Holden: Trax and Cruze.

28.     JST's HIT2 Connectors are subject to exacting quality control.

29.     JST's HIT2 Connectors manufactured for Bosch have a quality performance record of only five (5) quality claims in the more than 15,000,000 HIT2 connectors manufactured for Bosch, yielding a performance record better than 0.315 parts per million.

30.     JST's HIT2 Connector quality record significantly exceeds the Six Sigmas (6σ) quality standard.

31.     Of JST's HIT2 Connectors provided to Bosch and used in General Motors vehicles, there has never been a field claim of a defect; there has never been a report of a connector defect; there has never been a performance failure; there has never been a product liability claim; and no one has ever been injured as a result of a connector defect.

## THE HIT2 TRADE SECRETS

32.     Within the HIT2 Connector and related JST Drawings and Designs, there are various trade secrets that are not apparent from examining the connector itself.

33.     The HIT2 mating interface, engagement mechanism, pin layout, connector positioning, and material all contain features maintained as trade secrets by JST ("the HIT2 Trade Secrets").

34.    These features include but are not limited to: (1) proper mating clearances; (2) locking and retention with the female connector; (3) optimized pin geometry; (4) electric connection assurance features; (5) a retention and latching mechanism with the device unit case; (6) connector end side walls; (7) a pin position assurance mechanism; (8) connector positioning features; (9) stabilizing features for installation on the PCB; (10) connector to PCB pin layout configuration; (11) connector mating and keying configuration design; and (12) material selection.

35.    JST and not Bosch developed each of the HIT2 Trade Secrets described in the preceding paragraph.

36.    JST took steps to protect the secrecy of the HIT2 Trade Secrets.

37.    JST negotiated agreements having provisions forbidding the disclosure of HIT2 Trade Secrets.

38.    JST Drawings containing HIT2 Trade Secrets state that they contain proprietary information and are not to be used without written permission.

39.    JST marked certain documents, including JST Designs containing HIT2 Trade Secrets as "confidential."

40.    JST marked certain documents containing HIT2 Trade Secrets as JST's exclusive property, "not to be copied, reprinted, or disclosed to a third party,

and not to be used for manufacturing or any other purpose without [JST's] written consent."

41.     JST did not provide consent for Bosch to disclose any HIT2 Trade Secrets, JST Drawings, or JST Designs to Foxconn.

42.     JST maintained various internal procedures to safeguard the HIT2 Trade Secrets.

43.     JST's internal procedures for safeguarding HIT2 Trade Secrets include but are not limited to: (1) restricting access of HIT2 Trade Secrets within JST; (2) reporting requests for confidential information to management; (3) requiring approval to disclose confidential information including HIT2 Trade Secrets; (4) providing only specifically requested portions of confidential data, rather than an entire drawing or document; (5) requiring employees to sign non-disclosure agreements; and (6) de-authorizing specific individuals from access to HIT2 Trade Secrets when access was no longer necessary.

44.     JST also maintained procedures limiting external disclosure of the HIT2 Trade Secrets.

45.     JST's procedures limiting external disclosure of the HIT2 Trade Secrets include but are not limited to: (1) modification of certain confidential data such that if disclosed, this confidential data was not useful in manufacturing copies of the HIT2 connector; (2) modification of certain confidential data such that any

9

resulting copies would bear markers showing the resulting copies were made based on design information originating from JST; (4) refusal to provide certain HIT2 Trade Secrets outside of JST or JST's corporate affiliates; (5) restricting plant visits, requiring prior approval for visitors, and blocking from view areas not related to the purpose for which the plant visit was requested; (6) denying plant visits to individuals suspected of attempting to steal JST's trade secrets; and (7) non-disclosure agreements.

## HOW BOSCH OBTAINED THE HIT2 TRADE SECRETS

46.   Bosch represented to JST that Bosch needed JST Drawings and Designs including HIT2 Trade Secrets due to a requirement by General Motors. (Christiansen Emails of April 25, 2006, attached as Exhibit B).   Bosch further represented that this purported requirement for HIT2 Trade Secrets was "independent of Bosch/JST sourcing activity."   *Id.*   Bosch insisted that the HIT2 Trade Secrets were "to be provided to Bosch ASAP."   *Id.*

47.   Bosch knew at the time these representations were false.

48.   JST was not required by GM to disclose the HIT2 Trade Secrets to Bosch; JST did not have such an obligation independent of Bosch/JST sourcing; and Bosch did not need the HIT2 Trade Secrets "ASAP."

49.    JST, however, did not know Bosch's representations were false until years later when Bosch had already obtained JST's HIT2 Trade Secrets.  (Kittinger Email of May 22, 2008, attached as Exhibit C).

50.    Bosch further represented to JST that Bosch would respect the proprietary nature of the JST Drawings for the HIT2 connector program as set forth in the Non-Disclosure Agreement of March 1, 2005.  Bosch represented to JST that Bosch would safeguard confidential information in JST Drawings.

51.    Bosch further represented to JST in the March 1, 2005 Non-Disclosure Agreement that Bosch would return or destroy JST Drawings and Designs.

52.    Bosch further represented to JST in the March 1, 2005 Non-Disclosure Agreement that Bosch would not disclose HIT2 Trade Secrets to third parties.

53.    Bosch knew that its representations in the Non-Disclosure Agreement were false.  Bosch intended to gain as much information about JST's HIT2 Connector as possible so that Bosch could later use this information to help a low-cost contract manufacturer copy JST's HIT2 Connector.  JST has since learned that Bosch's *modus operandi* is to obtain its suppliers' intellectual property not to purchase or use products, but for the purpose of illegally copying them.

54.    JST relied on Bosch's representations above and provided much of the information Bosch demanded including HIT2 Trade Secrets.

55.    JST believed that Bosch would continue to work with JST remaining focused on quality and growing their businesses.

56.    When Bosch made these representations, Bosch intended to obtain HIT2 Trade Secrets and know-how, not for the purpose of using or buying more HIT2 Connectors, but for the purpose of assisting a competitor in making inexpensive copies of the HIT2 Connector.

57.    Bosch breached the trust that JST had placed in Bosch.  Unbeknownst to JST, Bosch was carrying out its scheme to move its supply of connectors from JST to a less expensive contract manufacturer by using of JST's HIT2 Trade Secrets taken from JST Drawings and Designs.  Bosch later represented that certain HIT2 Trade Secrets were Bosch's own.  Bosch further represented that certain Bosch drawings copied from JST were Bosch's own.

58.    Bosch obtained HIT2 Trade Secrets including but not limited to: (1) proper mating clearances; (2) optimized pin geometry; (3) a retention and latching mechanism with the device unit case; (4) tine plate geometry; (5) tine plate interface with the housing; (6) tine plate latching features; (7) connector positioning features; (8) connector polarization features; (9) stabilizing features for

installation on the PCB; (10) connector mating interface and PCB pin layout dimensions; (11) 3D models including design targets; (12) material selection.

59.     Upon information and belief, Bosch also obtained HIT2 Trade Secrets during multiple plant visits to JST manufacturing facilities and repeated Production Part Approval Process requests calculated to obtain HIT2 trade secrets.

## BOSCH'S TRANSFER OF TRADE SECRETS TO FOXCONN

60.     After Bosch had obtained many of the HIT2 Trade Secrets, JST received increasing demands from Bosch to lower the price for JST's HIT2 Connectors.

61.     Once JST stated that it could not lower prices for the HIT2 Connectors, Bosch's parent company, Defendant Bosch GmbH, issued a request for quotes to several other connector manufacturers to make a substitute for JST's HIT2 Connector.

62.     Upon information and belief, this request for quotes included JST Drawings and Designs and other materials containing JST's proprietary information.

63.     JST was not included among the recipients of this request for quotes. JST did not receive the request for quotes that included the drawings Bosch sent to JST's competitors.

64.    Among JST's competitors solicited to make a substitute for the HIT2 connector, Chinese contract manufacturer Foxconn was chosen.

65.    Foxconn did not invest in research and development to obtain detailed manufacturing drawings of the HIT2 Connector, and did not otherwise have access to drawings required to build the necessary tooling to manufacture the HIT2 Connector.

66.    Bosch, however, had already obtained the detailed connector design information that Foxconn needed.  Foxconn received these materials after it was chosen for the project to copy the HIT2 Connector.

67.    Upon information and belief, Bosch and Foxconn jointly developed their inexpensive copy of the HIT2 Connector.

68.    Upon information and belief, Foxconn received increasingly detailed drawings supplied by Bosch that incorporated HIT2 Trade Secrets from the JST Drawings and Designs.

69.    JST had given these JST Drawings and Designs only to Bosch.

70.    Foxconn began manufacturing a connector to replace the HIT2 Connector.

71.    The Foxconn connector is a low-cost copy of the HIT2 Connector.

72.     The Foxconn connector is identical in many respects to the HIT2 Connector and incorporates HIT2 Trade Secrets transferred from Bosch to Foxconn.

73.     Bosch took JST's intellectual property to help a low-cost manufacturer use JST's drawings and specifications to copy the HIT2 Connector, ultimately introducing into the market a copy of the HIT2 Connector.

<u>COUNT I</u>
**TRADE SECRET MISAPPROPRIATION**
**(Robert Bosch LLC)**

74.     JST realleges and incorporates all allegations as set forth herein.

75.     Bosch was engaged in a multi-year program to divert proprietary HIT2 connector design information to JST's direct competitor for the purpose of making inexpensive copies.

76.     The JST Drawings and Designs include HIT2 Trade Secrets which are trade secrets within the meaning of Michigan Uniform Trade Secrets Act, M.C.L.A. § 445.1910 *et seq.*

77.     The HIT2 Trade Secrets have independent economic value to JST and its competitors.   The HIT2 Trade Secrets are not generally known to JST's competitors and are not ascertainable through proper means.

78.     JST takes reasonable efforts to maintain the secrecy of its trade secrets.

79.     A competitor such as Foxconn would not be able to recreate the JST Designs and JST Drawings, or the HIT2 Connector through attempted reverse engineering of JST's actual HIT2 Connectors.  A competitor would not be able to discern, on its own, the measurements and tolerances that were specified by JST's own expert engineering team.

80.     Bosch obtained the HIT2 Trade Secrets knowing that they were not to be disclosed to any third party.

81.     At all times, Bosch recognized the JST Drawings and Designs were the proprietary property of JST and not to be disclosed to others without JST's consent.

82.     Bosch had a duty not to disclose the HIT2 Trade Secrets to any third party.

83.     Bosch had a duty to return the HIT2 Trade Secrets to JST or destroy them.

84.     In violation of these duties, Bosch caused the HIT2 Trade Secrets to be disclosed to Foxconn.  Bosch obtained the HIT2 Trade Secrets to transfer to Foxconn which received the HIT2 Trade Secrets obtained by Bosch, and copied the HIT2 Connector for Bosch's own use.

85.     Bosch is improperly using and disclosing JST's HIT2 Trade Secrets without JST's consent, including by, on information and belief, providing the JST

Drawings and Designs to third parties who are, or are intending to, improperly use the JST Drawings and Designs to manufacture copies of the HIT2 Connector.

86.    Bosch knew or had reason to know that the JST Drawings and Designs included the HIT2 Trade Secrets, and that Bosch had a duty to maintain the secrecy of that information, but chose instead to deliberately misappropriate the information and use it to Bosch's own advantage.

87.    As a direct and proximate result of Bosch's misappropriation of trade secrets, JST has suffered, and will continue to suffer, monetary loss to its business, reputation, and goodwill. JST is entitled to recover from Bosch, in amounts to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Bosch as a result of Bosch's acts of misappropriation, including but not limited to money received by Bosch from the sale of vehicle parts manufactured based upon JST's HIT2 Trade Secrets.  These damages include but are not limited to loss of confidential and proprietary information; loss of competitive advantage; actual and potential loss of sales, revenues, and profits; and costs.

88.    Bosch's misappropriation of the HIT2 Trade Secrets was deliberate, willful, and malicious.  Bosch gained access to the trade secret information by virtue of its long-standing relationship with JST, and by misrepresenting its need

for and intended use of that information.  As a result, JST is entitled to recover its attorneys' fees from Bosch pursuant at least to M.C.L.A. § 445.1905.

## COUNT II
## COPYRIGHT INFRINGEMENT
### (Robert Bosch LLC)

89.    JST realleges and incorporates all allegations as set forth herein.

90.    The JST Drawings are original material and constitute copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq*.  JST is not required to file a copyright registration for the JST Drawings prior to filing suit because they are not "United States Works" within the meaning of 17 U.S.C. § 411.

91.    Without consent, authorization, approval, or license, Bosch knowingly, willfully, and unlawfully copied, adapted, and distributed JST's Drawings, portions thereof, or derivative works and continues to do so.  Bosch is infringing JST's copyrights in the JST Drawings.

92.    On information and belief, Bosch has made and supplied copies of JST's copyrighted works, and derivative works, to unauthorized Bosch employees and engineers, and to low-cost manufacturers to manufacture parts for Bosch.  On information and belief, those low-cost manufacturers are using, or intend to use, JST's copyrighted works of manufacture according to JST's Drawings and Designs, at least some of which are being purchased by Bosch.  Such use is not

licensed. Accordingly, Bosch has directly, contributorily, and vicariously infringed JST's copyrighted works by, with knowledge of the infringing activity, encouraging, inducing, allowing, materially contributing, causing and assisting others to copy, adapt, use, and distribute JST's copyrighted works and works derived therefrom.

93.     On information and belief, Bosch's direct, contributory, and vicarious infringements are and have been knowing and willful.

94.     By this unlawful copying, use and distribution, Bosch has violated JST's exclusive rights under 17 U.S.C. § 106(1), (2), and (3).

95.     Bosch has realized unjust profits, gains, and advantages as a proximate result of its infringement, and will continue to do so as long as such infringement is permitted to continue.

96.     As a direct and proximate result of Bosch's direct and willful copyright infringement, and contributory and vicarious infringement, JST has suffered, and will continue to suffer, monetary loss to its business, reputation and goodwill. JST is entitled to recover from Bosch, in amounts to be determined at trial, the damages it has sustained and will sustain, and any gains, profits and advantages obtained by Bosch as a result of Bosch's acts of infringement or Bosch's use and publication of the copyrighted materials.

97.   JST is further entitled to an injunction restraining Bosch from engaging in any further such acts in violation of the United States copyright laws. JST has suffered an irreparable injury, the remedies available at law are inadequate to compensate for that injury, the balance of interests strongly favors an injunction, and the public interest would not be disserved by an injunction.  Unless Bosch is enjoined and prohibited from infringing JST's copyrights and contributorily infringing JST's copyrights by knowingly and materially causing, assisting and encouraging others to infringe those copyrights, and unless all infringing products and advertising materials are seized, Bosch will continue to directly and indirectly infringe JST's copyrights.

### COUNT III
### UNFAIR COMPETITION
### (Robert Bosch LLC)

98.   JST realleges and incorporates all allegations as set forth herein.

99.   Irrespective of the HIT2 Trade Secrets, Bosch engaged in a campaign of unethical and unfair conduct in obtaining JST's know-how and other proprietary information related to the HIT2 Connectors for the purpose of producing an inexpensive copy of JST's HIT2 Connector.

100.   Bosch obtained know-how and other information that does not qualify as trade secrets, by misrepresenting Bosch's need and intended purpose.

101.   Bosch represented that it needed the HIT2 Connector know-how and other information in order to validate, purchase, or use JST's HIT2 Connectors.

102.   Bosch did not need the HIT2 Connector know-how and other information in order to validate, purchase, or use JST's HIT2 Connectors.

103.   Bosch did not intend to use the HIT2 Connector know-how and other information in order to validate, purchase, or use JST's HIT2 Connectors.

104.   Bosch intended to use the HIT2 Connector know-how and other information to develop an inexpensive copy of the HIT2 Connector.

105.   Contrary to Bosch's representations, Bosch used the HIT2 Connector know-how and other information in order to assist Foxconn in making an inexpensive copy of the HIT2 Connector.

106.   Bosch and Foxconn are unfairly competing in the marketplace.

107.   As a direct and proximate result of Defendant's actions, JST has been injured in lost revenue and profits, loss of competitive advantage, and attorney fees and costs.

108.   Bosch willfully and maliciously undertook the foregoing actions to gain an unfair advantage over JST, with knowledge of and disregard for JST's rights, and with the intention of causing harm to JST and benefiting Defendant.

## COUNT IV
## UNJUST ENRICHMENT
### (Robert Bosch LLC)

109.   JST realleges and incorporates all allegations as set forth herein.

110.   JST, as described above, worked in good faith to design and develop the HIT2 Connector for Bosch's use.   During JST's development of the HIT2 Connector, Bosch was provided access to new and proprietary connector technologies and access to one of the most advanced connecter manufacturing facilities in the world.   JST further provided Bosch with confidential technical specifications, dimensions, and tolerances, including without limitation, access to JST Drawings and Designs.   Even apart from the confidential information contained in the JST Drawings and Designs, the compilation of know-how and other information related to the manufacture of the HIT2 Connectors represents years of development and optimization, which JST completed at great expense.

111.   Bosch engaged in a scheme to misappropriate the labors and expenditures of JST.   Bosch executed its plan to copy and distribute the JST Drawings and Designs and other know-how to JST's direct competitor.

112.   Bosch unjustly retained the benefit of access to JST Drawings and Designs and know-how.

22

113.   Bosch's retention and diversion of the JST Drawings and Designs and know-how to JST's direct competitor violate the fundamental principles of justice, equity, and good conscience.

114.   Bosch unfairly benefited when it reaped the reward of representing the JST Drawings and Designs and know-how as Bosch's own.   Bosch further benefited when it succeeded in assisting Foxconn to make an inexpensive copy of the HIT2 Connector based on JST Drawings and Designs.

115.   JST is entitled to recover for the unjust enrichment resulting from Bosch's misconduct.

<u>**COUNT V**</u>
**BREACH OF SETTLEMENT AGREEMENT**
**(Robert Bosch LLC and Robert Bosch GmbH)**

116.   JST realleges and incorporates all allegations as set forth herein.

117.   In early 2015, JST discovered that Bosch transferred HIT2 Trade Secrets and other proprietary information to Chinese contract manufacturer Foxconn.

118.   Several months later, JST stopped shipment of JST's HIT2 Connectors to Bosch.

119.   Bosch sued JST seeking to obtain an injunction for continued shipment of the HIT2 Connectors through 2017.

120.   Following a preliminary injunction that expired after 60 days, JST, Bosch, and Robert Bosch GmbH entered into the Settlement Agreement of August 17, 2015, attached as Exhibit A.

121.   The Settlement Agreement obligated Bosch and Robert Bosch GmbH to provide JST with certain connector documents it disclosed to Foxconn.

122.   Paragraph 7 of the Settlement Agreement required Bosch and Robert Bosch GmbH to "provide JST with (i) all BCM Connector drawings, designs, and other documents (showing among other things, specifications, dimensions, and tolerances) previously provided by Bosch to Foxconn…."

123.   Paragraph 7 of the Settlement Agreement further required Bosch and Robert Bosch GmbH to "provide JST with … (ii) all BCM Connector drawings, designs, and other documents (showing among other things, specifications, dimensions, and tolerances) provided or used for PPAP for GM business."

124.   Bosch and Robert Bosch GmbH had a duty to provide JST with all versions of the Bosch drawings labeled 6 002 JE0 900, 6 002 JE1 055, and all other BCM connector drawings disclosed to Foxconn; all corresponding 3D models; and all BCM drawings, designs and documents for PPAP for GM, not including proprietary Foxconn test data.

125.   Defendants had three (3) business days from the effective date of the Settlement Agreement to provide the documents required by Paragraph 7.

126. Defendants have not provided all BCM Connector drawings, designs, and other documents (showing among other things, specifications, dimensions, and tolerances) previously provided to Foxconn.

127. Defendants have not provided all BCM Connector drawings, designs, and other documents (showing among other things, specifications, dimensions, and tolerances) provided or used for PPAP for GM business.

128. The documents required by Paragraph 7(i) and 7(ii) that Defendants withheld are not confidential or proprietary information of GM or Foxconn.

129. JST attempted to obtain the withheld documents from Defendants in a letter dated September 2, 2015 (attached as Exhibit D) and in emails dated August 26, 2015 (attached as Exhibit E) and August 21, 2015. Defendants' responses are included in the email chain above and a letter dated September 4, 2015 (attached as Exhibit F).

130. Defendants Bosch and Robert Bosch GmbH breached their duties under the Settlement Agreement by withholding and continuing to withhold connector documents it disclosed to Foxconn.

131. JST has been injured as a direct and proximate result of Defendants' breach of the Settlement Agreement.

## PRAYER FOR RELIEF

WHEREFORE, JST respectfully prays that judgment be entered for JST Corporation and against Robert Bosch LLC, as follows:

A.     Entry of judgment holding Bosch liable for trade secret misappropriation, copyright infringement, unfair competition, unjust enrichment, and breach of settlement agreement;

B.     An order permanently enjoining Bosch, its officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them, from continued acts of misappropriation of JST's trade secrets;

C.     An order permanently enjoining Bosch, its officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them, from continued reproduction and distribution of the JST Drawings and JST Designs, continued use of the JST Drawings and JST Designs to make or have made components, and continued purchase, import, distribution, offer for sale, and sale of components manufactured using the JST Drawings and JST Designs;

D.     An order that all copies of the JST Drawings or derivative works made, used, or distributed by Bosch, and all components manufactured based on

the JST Drawings and JST Designs, be impounded and destroyed or otherwise reasonably disposed of;

E.     An order permanently enjoining Bosch, its officers, agents, servants, employees, its affiliated companies, its assigns and successors in interest, and those persons acting in concert or participating with them from further unfair competition, including the continued and further use of the JST Drawings (and JST Designs reflected therein) and other JST information;

F.     An order enforcing the Settlement Agreement and requiring Defendants to provide JST with the drawings  and other documents it provided to Foxconn, as required by the Settlement Agreement;

G.     Monetary damages resulting from Bosch's wrongful acts, including pre-judgment and post-judgment interest;

H.     An award of all of the gains, profits and advantages received by Bosch as a result of its wrongful conduct;

I.     An award of attorney fees;

J.     JST's costs incurred in this action; and

K.     Such other and further legal and equitable relief as may be available under law and which the Court may deem proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands trial by jury.


Respectfully submitted,

**BUTZEL LONG, a professional corporation**


s/*Bruce L. Sendek*
Bruce L. Sendek (P28095)
Cynthia J. Haffey (P57352)
150 West Jefferson, Suite 100
Detroit, MI  48226-4452
(313) 225-7000
sendek@butzel.com
haffey@butzel.com

-and-

Keith Scala
Myers Bradford, PLLC
1300 Pennsylvania Avenue
Suite 700
Washington, DC  2004
(202) 536 5701
kscala@myersbradford.com

***Attorneys for Plaintiff***

Dated:  October 30, 2015