UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J.S.T. CORPORATION,
    Plaintiff,

v.                                                                               Case No. 15-13842

ROBERT BOSCH LLC,                                   HON. AVERN COHN
f/k/a ROBERT BOSCH
CORPORATION,
ROBERT BOSCH GMBH, and
BOSCH AUTOMOTIVE PRODUCTS
(SUZHOU) CO., LTD.,
    Defendants.
_____/

## MEMORANDUM AND ORDER DISMISSING MOTION TO STRIKE AND STAYING DEFENDANT'S COUNTERCLAIMS (DOC. 177)

### I. INTRODUCTION

This is a misappropriation of trade secrets case. Plaintiff, J.S.T. Corporation ("JST"), is suing Defendants, Robert Bosch LLC, Robert Bosch GmbH, and Bosch Automotive Products Co., Ltd. (collectively, "Bosch") for misappropriation of its trade secrets.[1]

In 2005, General Motors Company solicited bids for its "Global A program," which sought sourcing for its vehicles' body control modules ("BCM"). Bosch submitted the winning bid, which contemplated JST as the provider of certain BCM components. Pursuant to their business arrangement, JST was to provide Bosch with BCM components, which were jointly developed by JST and Bosch, for a three-year period.

---

[1] JST has also filed copyright claims that have since been stayed by the Court pending disposition of the trade secret claims (Doc. 190).

At the end of the three-year period, Bosch had the option to seek alternative sourcing for the BCM components furnished by JST.

Near the end of the three-year period, JST told Bosch there had to be a price increase if Bosch desired to continue using JST as a supplier. Bosch solicited Foxconn Technology Group ("Foxconn") as an alternative supplier and there was no pause in the delivery of BCMs to General Motors with Foxconn as the supplier.

After Bosch began using Foxconn as a supplier, JST filed this lawsuit. Bosch counterclaimed, saying that JST caused the switch to Foxconn as a result of fraudulent statements made during price negotiations. Bosch's counterclaim is based on fraud, promissory estoppel, and unjust enrichment (Doc. 166). Now before the Court is JST's motion to dismiss Bosch's counterclaim and strike related defenses. (Doc. 177). For the reasons that follow, the motion to dismiss is STAYED and the motion to strike is DENIED.

## II. BACKGROUND

JST is in the business of manufacturing electrical connectors that are used to join electrical terminals in the creation of electrical circuits. A header is part of the electrical connector that is used in a body control module (BCM), which is a small computer system that controls electronic processes (e.g., power locking, power windows) inside the body of an automobile.

The JST's product that is the subject of the current lawsuit is the HIT2 header. Bosch purchased the HIT2 header from JST and assembled it into a BCM that Bosch then sold to non-party General Motors. As part of the BCM development and bidding process, JST provided Bosch with technical drawings and three-dimensional computer

models of the HIT2 header ("JST designs"), subject to a non-disclosure agreement. (Doc. 177-1). According to JST, these designs contained protectable trade secrets.

JST says Bosch gave the JST designs to third-party manufacturers in an effort to solicit bids to reproduce the HIT2 header. The winner, Foxconn, used the JST designs to manufacture similar, replacement headers and sell them to Bosch at a lower price.

In May of 2015, Bosch sued JST seeking an injunction because "JST suddenly, unexpectedly, and unlawfully announced that it would be stopping the supply of Connectors to Bosch." (Case 15-11832, Doc. 5). In its complaint, Bosch recognized that the reason JST stopped supply of the connectors was because "JST disputes Bosch's right to certify a different supplier for different connector parts at plants not subject to the parties' supply agreements" and "claims that Bosch disclosed JST's confidential information to other supplier." Id. The Court ordered JST to continue supplying Bosch with connectors (Case 15-11832, Doc. 20). Shortly after the injunction was issued, the parties entered into a settlement agreement. (Case 15-11832, Doc. 20); (Doc. 1, Ex. A).

According to paragraph 8 of the parties' settlement agreement, JST reserved its right to assert claims relating to the misappropriation of trade secrets, which are the subject matter of the present lawsuit. However, Bosch made no such reservation. The relevant paragraph states:

> Bosch [and its affiliates] . . . release and discharge JST . . . from all claims related to the Global A Program that Bosch asserted against JST in the Litigation. This release is intended to be limited in character and does not include claims that Bosch may have against JST in the event JST breaches this Agreement or claims that Bosch may have against JST and/or its affiliates concerning programs other than the Global A Program.

3

(Doc. 1, Ex. A). In filing the counterclaim, Bosch did not assert that JST breached the settlement agreement.

In October of 2015, JST filed trade secret misappropriation claims. (Doc. 1). Extended discovery took place. On June 05, 2018 (three years later), Bosch counterclaimed. (Doc. 166). In its counterclaim Bosch says that JST made fraudulent statements during price negotiations that wrongfully induced Bosch to switch to Foxconn as a supplier. Bosch's counterclaim alleges fraud, promissory estoppel, and unjust enrichment (Doc. 166).

JST has filed a motion to dismiss the counterclaim and strike the affirmative defenses that mirror the counterclaim. At oral argument on the motion, neither party mentioned the possible preclusive effect of the prior settlement agreement. Also, the Court views as a crucial issue regarding Bosch's counterclaims the apparent absence of any injury to Bosch. However, the parties have not focused their arguments on that issue.

### III. DISCUSSION
#### *A. JST's 12(f) Motion to Strike*

Rule 12 permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[m]otions to strike are generally disfavored and 'should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." San Diego Unified Port District v. Monsanto Co., 309 F.Supp.3d 854, 861 (S.D.Cal. 2018) (citations omitted). Courts often require a showing of prejudice before granting a 12(f)

4

motion to strike. Id. The decision to strike under Rule 12(f) is within the discretion of the court. Id.

Here, JST has not shown that it would be prejudiced by the defenses raised in Bosch's Answer. The Court will not strike the defenses because, not only is JST not prejudiced, but also because the defenses are not "redundant, immaterial, impertinent, or scandalous . . . ." Fed. R. Civ. P. 12(f).[2]

## *B. JST's Motion to Dismiss*

The Court took notice of the prior settlement agreement during consideration of JST's motion to dismiss. Concerned by the language of the settlement agreement, the Court sent an email to the parties and inquired as to whether the settlement agreement can be read to preclude Bosch's counterclaim. The Court's inquiry to the parties and the parties' responses are attached as Exhibit A.

JST and Bosch had opposing positions regarding the effect of the settlement agreement and its relevance to this case. (Ex. A). The inconsistencies in the parties' positions regarding the prior settlement, and the relevant scope of the two lawsuits, leads the Court to believe that a full exploration of the misappropriation claims will be helpful in determining whether the settlement agreement bars Bosch from bringing claims related to the HIT2 connector and/or the Global A program.

Further supporting the Court's decision to stay consideration of the counterclaim is the vagueness surrounding Bosch's alleged injuries. At this point in the case, the

---

[2] The Court recognizes that the affirmative defenses appear "redundant" when contrasted with the counterclaims. However, the counterclaims will be stayed, and consequently, the counterclaims and defenses will not be alongside each other during consideration of the misappropriation claims. As such, the Court is not concerned by the redundancies.

Court doubts that Bosch has adequately plead a compensable injury.³ Because full development of JST's misappropriation claims will aid the Court in understanding the nature of Bosch's counterclaims, and whether Bosch has standing to sue, the Court finds it appropriate to stay the motion and any related proceedings on Bosch's counterclaim.

## IV. CONCLUSION

For the reasons stated above, JST's Motion to Dismiss is STAYED (Doc. 177) and the accompanying Motion to Strike is DENIED (Doc. 177).

SO ORDERED

                                                  s/Avern Cohn
                                                  AVERN COHN
                                                  UNITED STATES DISTRICT JUDGE

Dated: 1/2/2019
Detroit, Michigan

---

³ Bosch says that its "most vital" injury is "having to defend a lawsuit based on JST's claims." (Doc. 189); see also, (Doc. 160) ("The damages are the time and expense that the engineers had to be dealing with this lawsuit, had to comply with JST's - - they forfeited documents."). However, when evaluating a counterclaim, "standing must be established independent of the lawsuit filed by the plaintiff." Walker v. City of Lakewood, 272 F.3d 1114, 1124 (9th Cir. 2001). "Litigation costs are insufficient to establish standing for purposes of Article III." San Diego Unified Port District v. Monsanto Co., 309 F.Supp.3d 854, 861 (S.D.Cal. 2018). A counterclaimant "bears the burden of establishing" that its injuries are more than "costs incurred solely in connection with this lawsuit." Id. Further, there is no injury when the relief requested is largely duplicative of the affirmative defenses. See, Methelus v. Sch. Bd. of Collier Cty., Fla., 2017 WL 3421470, at *3 (M.D. Fla. Aug. 9, 2017).